May it please the Court, Cheryl Gordon-McLeod on behalf of Mr. Lee. Mr. Lee was convicted of three crimes, the most serious of which was the Felon in Possession, 18 U.S.C. section 922 conviction, for which he received a sentence of 216 months. So I'm planning to concentrate on the two issues that would affect that conviction this morning, the failure to give the requested theory of the defense instruction and the courtroom closure issue, although if the Court has questions on the other issues, I'm happy to answer them. With respect to the failure to give the requested theory of the defense instruction, the defense proposed an instruction on fleeting possession of the firearm. The first sentence of that was entirely different from any of the other instructions given. It stated, quote, a person is not in possession of something simply because the person momentarily touches or holds the thing or has passing control of it. The proposed instruction was based on the defense theory of the case, as articulated in the defense opening, a portion of which we've given you in the excerpts, based on the defense closing, based on the defense trial brief. In fact, that was the only defense theory of the case. What law supports that statement? Well, in the Ninth Amendment, it doesn't support the statement. U.S. v. Kearns, K-E-A-R-N-S and U.S. v. Batamans, B-A-T-I-M-A-N-A, Batamana, both of those were possession of contraband cases, possession of drug cases. In Kearns, this Court held in 1985, I believe, that momentary or fleeting possession of a drug case was a mere touching of the evidence. And the seller delivered marijuana to the buyer. The buyer put her hand into the bag, took some marijuana out to test it, placed it back in, and was charged with both conspiracy and possession. And this Court said, well, the mere touching of it is sufficient connection with the conspiracy to uphold the conspiracy count, but it doesn't support the possession count. And it reversed the possession conviction for insufficiency of the evidence. Batamana was similar, but it involved heroin, I think 50 pounds of heroin. The heroin was put in the defendant's car. The defendant even stuck his hand into one of the bags of heroin to test it, I think to taste it. This Court reversed the possession conviction, holding there was insufficient evidence of possession merely by touching it momentarily to sustain the conviction. So Kearns and Batamana are the controlling Ninth Circuit authority on what you need to have to prove possession where there is a possession of contraband case. The cases cited by the government are primarily out-of-circuit cases, except for the Johnson case, U.S. v. Johnson, this Court's case from about 2006. Johnson, the cases it relies on, and the other cases cited by the government are completely different. They are basically Good Samaritan cases. They did not overturn the law of this circuit as enunciated in Kearns and Batamana on fleeting possession when you're just momentarily touching it. They developed a new area of law when the Good Samaritan, when the defendant comes in with a defense that, as in Mason, the D.C. circuit case that it relies on, I picked up the gun on the street because I didn't want the kids to get it, or the Tenth Circuit case that I cited, Baker, I picked up the ammunition when I saw it on the street because I didn't want the children to get it. And what Johnson from this Court and the other circuit courts cited by the government have held is that in that situation, where the argument is that it was for a good purpose, a Good Samaritan type of purpose, that's no defense to a 922G conviction. But Johnson did not purport to overturn Kearns and Batamana, which spoke on a different subject, that is, fleeting possession, where there was no claim of Good Samaritan ownership. And I think the one thing the government and I would agree on in this case is that there was no claim of Good Samaritan in this case. Kearns and Batamana are therefore the controlling law supporting the requested instruction. No other instruction substituted in for it and allowed the defense to argue their theory of the case. The best candidates would be the elements instruction, number 14, but all that said about the element was that the government had to prove possession. It lacked the limitation of passing control, and it lacked the requirement of dominion in control. The other possible candidate is the definition of possession in instruction number 17, but that one says possession is there when the defendant knows of the presence of the object and, in the alternative, either has physical control of it or has the power and intent to control it. Well, that's the opposite of the fleeting possession instruction. Under that definition of possession, any physical control would do even a fleeting touch. So the proposed defense instruction to which defense counsel took exception or objected when it wasn't given is the only one with the fleeting possession theory of the case, nothing else covered for it in terms of argument, and the facts certainly supported the giving of such an instruction. Well, what was the argument that was made concerning possession? I'm sorry, Your Honor? What argument did defense counsel make concerning possession? Did he argue there was no dominion in control here? Yes. The defense made this argument without the instruction, and the defense lost. I mean, the defense made it without the instructions and with instructions that were adverse to his theory of the case, in particular with the, with jury instruction number 17 defining possession as physical control, any physical control, and the defense lost on that. But he did try to argue this theory in opening as well as closing. In fact, it was the only theory of the case. There was no dispute that Lee was in the car, that was his girlfriend's car, that there was this gun in the car, and that it turned up with his fingerprint on the barrel. So the only argument the defense could make is that the touching was fleeting and occurred in the moment of the crash. It's still an argument over control, I would think. I mean, your instruction says passing control isn't good enough. And I don't know if the two Ninth Circuit cases you cited really went to control. In other words, you dip in and take a little heroin to test it or something like that. Have you yet exhibited control over the whole bag, or is somebody else still standing there who has the control and you don't? I'm not sure that passing control is the law, that it doesn't count. Well, both Kearns and Badamana were not jury instruction cases. They were sufficiency of the evidence cases. So we don't have a definitive So you don't have the exact words. Exactly. But as I read them, there was a lot of pot in one case and a lot of heroin in the other case. Now, you never take control of 50 pounds of heroin by putting it in your pocket or carrying it. You're never going to have that. There's always going to be some form, some evidence that purports to show ownership over all of it. What they had in each of those cases was actual physical touching of a bit of drug for a moment. Purposeful touching, but fleeting touching. That's what the defendant said we had here. Now, the government argues that there was other evidence and contradictory statements, and that's certainly true. The burden for obtaining a theory of the case instruction, though, is extremely low. Any evidence will do, even if it's weak, even if it's insufficient evidence, even if there's inconsistent evidence on the topic. I think the only other relevant circuit precedent, Your Honor, would be the Johnson case, and that's much farther afield than Kearns and Badamana, because that dealt with purposeful touching, touching supposedly for a good reason, and touching that extended for several hours rather than, as Mr. Lee testified, for just a moment. I guess the only other, the government's only other argument on that is that the failure to give the instruction was harmless. Under Escobar to Bright, that's not an available argument. I don't think we need to get that far, though, because what we have as the instructions were given is probably two possible theories of conviction. One that the jury believed the defendant owned the gun, which would have been a permissible theory, and the other that the jury believed that he had possession of the gun, possibly because he momentarily touched it, an impermissible theory, I believe, under Kearns and Badamana. And following Yates and Griffin, the cases that we've cited in the brief and Qualls, which applied Yates to a 922G case, where there's two possible theories of conviction, one lawful and the other not, the remedy is reversal. The other issue that I wanted to talk about was the courtroom closure issue. And let me start quickly with the points on which I think the parties agree. There's a portion of the voir dire that was closed to the public in this case. Now, the briefs argue a little bit about that, but I think at this point it's safe to say that the parties agree that what happened in the district court, what occurred in the district court when the challenges for cause, the arguments, the rulings were made, is that the parties were not in the courtroom. They were in a separate room, whether you call it an anteroom or chambers or not, and that there were two conversations with jurors which were not open to the public either, whether you call it sidebar or anteroom or not. So I think we're in agreement that a portion of the voir dire was closed. The portion covered all of the challenges for cause, all of the arguments on challenges for cause, the judge's rulings on the challenges for cause, and the questioning of two jurors, not the full questioning of those jurors, but questioning of one juror whose dad was in the FBI, and he wanted that done privately, and questioning of another juror who had said he was a felon to clarify whether he was qualified for service or not. But the defendant was present at both of those occasions. That's correct. I'm not arguing lack of defendant's presence. I'm only arguing closure to the public, the Sixth Amendment right to a courtroom that is open to the public. I think the key argument in this case is oh, and the final thing I think the parties would agree on is that the press enterprise factors were not satisfied. There was nothing on the record to say that there was compelling interest likely to be prejudiced, that only closure would avoid prejudice to that interest, that there were no less restrictive alternatives, and explicit findings on the record. Well, let's say that a ruling is made at the sidebar and the defendant is present, and those rulings are transcribed or taken down by the court reporter. Would you argue then that members of the public ought to be able to congregate around the bench to listen to what's going on? No, Your Honor. And that, you know, Justice Brennan discussed that issue in his concurrence in the Richmond case, Richmond newspapers case, which we discuss a bit in the briefs. We're not arguing that every sidebar, every in-chambers conversation needs to be open to the public, or alternatively that there can be, you know, sidebars or chambers conversations. The distinction that Justice Brennan drew, and I think that the cases following draw, is whether the discussion is something that is distinct from the trial, as in either trivial housekeeping or not part of the fact-finding process, or something that is a part of the trial. And in the cases we've cited in the briefs, we have examples. Judges make rulings that are part of the trial at the sidebar. I'm sorry, Your Honor? Judges make rulings that are part of the trial at sidebar. They're not going to have a sidebar for trivia. Well, the distinctions that the cases make is whether it can be considered housekeeping, separate from the trial in that it's separate from factual findings. I don't know how legal rulings are going to be considered in this, but I don't think we need to get into the details of that, because here what we have is voir dire. And we already have controlling authority from Press Enterprise and Richmond that the Supreme Court's found that voir dire is a portion of the proceedings that must be open to the public. It's not one of those things that you can do at sidebar. Well, it must be open if the press wants in to some degree. But it seems to me if the defendant can waive a right, it's not unusual at all. And when the defendant doesn't object to closing part of the proceedings, it's hard for me to see how his rights are interfered with when it's a different question if a newspaper comes in and says, well, the defendant has agreed to have some of this trial done in private, but we the public have some sort of right to come in. And the cases you're relying on most, I think, are the newspaper cases. It's sort of a First Amendment claim. I think it was Waller v. Georgia, though, that said that the standards applicable to the newspaper cases and the First Amendment cases, those same standards are applicable when the defendant raises the issue under the Sixth Amendment. When he raises it. Sorry? When he raises it, yeah. Well, to get to that portion of what you're saying, that the defendant didn't object, I think that's more a question of prejudice or harmless error or standard of review. What was the prejudice? Well, under Olano, I think under Olano, the answer is that the prejudice in an error of this sort is unquantifiable. And Olano, the plain error case, left open an exception to the four-part plain error test for a situation where the error is unquantifiable, where it is structural error. That's Olano 507 U.S. at 735. And the Gonzales-Cuerta case that we cited from the Tenth Circuit applied that Olano exception and said that structural error is what the Olano court was talking about. If there's structural error, then the third and fourth prerequisites to plain error review, that is, whether it affected substantial rights and whether it impugned the integrity and the fairness of the proceedings, must be relaxed, because structural error is error for which we will presume that there has been harm. So this... Structural error is not quantifiable, but it seems to me that when you're arguing about a challenge, they are quantifiable. I mean, we get appeals about whether a challenge for cause should have been allowed or not allowed. It's... But I'm not complaining. It's different from an appeal when you don't have counsel. They won't let your counsel in a courtroom or something. But under Arizona v. Fulminante, courtroom closure is precisely the same as an appeal where the defendant didn't have counsel. Arizona v. Fulminante, the Supreme Court case, puts courtroom closure in the exact same category with uncounseled defendant and biased judge as the three paradigm cases where the error would be considered structural. Would this apply in civil cases as well? Would this apply to... Well, it wouldn't be the criminal defendant. There wouldn't be a criminal defendant in the civil case, and there wouldn't be the Sixth Amendment right. So it wouldn't cause reversal of the civil case, although the press would have the right to raise the issue in order to gain entry. So let me ask you this. I did this once in a case. It was going to be a long, protracted jury selection. We had questionnaires and all that. And I went back in chambers, and I looked through the list. I knew who was coming up. We had them numbered. And so I picked what I thought was a balanced jury, all right? And I called the lawyers in. I said, how about this for a jury? One side said, that's fine. The other side said, that's fine except for one person. So let me check with my client. Went back, talked to the client, and the client said, I don't care for this particular juror. I said, fine. So we took that juror off, and I went through, and I put another juror on. I said, now how about this jury? Fine. How about this jury? Fine. Everybody thought it was fine. The press was somewhere else. They didn't. They weren't in on that. So did I commit error? Your Honor, I think you did exactly what the trial judge did in this case. And respectfully, I would argue that accepting the challenges for cause and making rulings on them. Not a criminal case, civil case. Oh, it's totally different. Well, there's no right of the defendant to be raised in that case. The question is whether the press was seeking access. Oh, they were pounding down the doors. I think the key distinction between Mr. Lee's case and yours is that there were jurors in addition that were also questioned privately. And jury questioning is the heart of voir dire. Well, jurors were questioned privately with a questionnaire. Well, jurors are questioned privately typically in a case if you want to avoid contamination. You give them a questionnaire. You say, go home, fill it out. It's about that thick, see? And they go out and fill it out. And if they want private questioning, typically what you do is you bring the rest of the veneer downstairs and you have the jurors separate. You don't kick the public out. You kick the rest of the jury out. Would the public be entitled to look at those questionnaires? Your Honor, the cases that I've cited to don't deal with written questionnaires. They specifically deal with presence in the courtroom. And actually, that was part of the answer to your question earlier about, well, didn't they get the transcript later? In the Richmond case, they got the transcript later. It was in 1978. And the Supreme Court opinion says that the transcript was released to the public the very next day, which is like real time that we have now. Nevertheless, it was a violation of courtroom closure to kick the public out. In that case, we had no transcript. Then it was even more closed. What? I've used my time. How have the statute of limitations run on me? I'm sorry, Your Honor. I'm sorry. It was one of my finest moments. Thank you very much, Your Honor. Good morning. May it please the Court. My name is Helen Bruner. I'm an assistant United States attorney for the Western District of Washington, here to represent the United States. Let me start with the courtroom closure argument, since that is where we left off, and point out, first of all, that the Supreme Court cases that are cited, the Press Enterprise case, the Richmond case, the Waller v. Georgia, which addresses the defendant's right to a public trial, all involve closures that were of an extended duration. For example, in Waller v. Georgia, what was closed was the entire suppression hearing. And the decision turned on the fact that the entire hearing was closed. The Court does mention in Press Enterprises that there may be partial closures. And this Court, I would suggest, has set the standard for how the particular closure in this case, if we want to call it a closure, because the events took place out of the hearing of the public, should be judged. And that is the Ivestor case. In Ivestor, the Court dealt with what it considered to be trivial closures. And suggested that the first question for the Court to decide is whether or not, in fact, there were Sixth Amendment violations based on a trivial closure. And to do so, this Court should, as a reviewing Court, should look at whether or not the values supported by the public trial were, in fact, violated by the act in question. So let me take a moment and review, in fact, what it is that was closed here. We had a voir dire that was open to the public. It covers some 73 pages of transcript. About 14 pages of that transcript were actually...covered various conversations that took place out of the hearing of the public. Out of that, five pages covered the challenges for cause, and I'll come back to that in a minute because I'm not really sure I would call them challenges for cause. But five pages covered those challenges and the questions... the one question asked of each of two jurors. In the one case, the juror was asked what it was that he was concerned about with his family connection to a trial. He answered that his father had been an informant for the FBI. The other was a question of whether or not a juror who mentioned that he had a felony conviction, whether or not his rights were restored. Those two questions. So we're talking about five pages, and in those five pages of transcript, if you review them, they're at SER... I believe... Well, I will come back to that in a moment, but in any event, in those five pages, the court goes through the various jurors that he heard say could not be fair, lists them for the parties, and then asks the parties whether or not there are any other jurors that they were concerned about. And there's exactly one page in which either the government or defense counsel mentioned any other jurors that they were concerned about, and there was no objection to the other jurors that the court struck, either because they said they could not be fair or they had scheduling difficulties. So that is the part of the trial that we're arguing about here as being closed. And I would submit to the court that under Ivestor that that particular closure here was trivial, and moreover, that nothing in that short closure did anything to involve the values or reduce the value of the open trial in this case. It certainly... Those values being to ensure a fair trial, to remind the prosecutor and the judge of their responsibilities to the accused and the importance of the function. I don't believe that anything that occurred there would in any way implicate those values. In fact, to the contrary. And then the other two values are to encourage witnesses to come forward. Well, there were no witnesses that really needed to come forward here or to discourage perjury. And I suppose at best you could say discouraging perjury by the two jurors in response to the questions, but the questions were pretty limited, one question each to each juror. So for those reasons, I believe this should be considered a trivial matter, that the Sixth Amendment rights here are not implicated and that this should not be a basis for reversal of Mr. Lee's conviction. Let me turn then to the question of the fleeting possession instruction. Again, the question here is whether or not the instructions as given in fact covered Mr. Lee's theory of the defense. And I would submit, Your Honors, that in fact they do. In this case, his theory is that he did not know that the gun was there and thus that there was no knowing possession. Well, the court's instructions said that the jury could only convict if he had knowing possession, defined the term knowing to mean an awareness of the fact and not acting through ignorance or mistake, and then defined possession as either knowing possession or knowledge of the gun with an intent to possess it. Now, if one looks at the factual basis for Mr. Lee's theory of the defense instruction, one has to look at Mr. Lee's trial testimony. That's the only basis for a factual basis for this instruction. How about dominion and control? Did the words dominion and control come in? The words dominion and control were not in the court's instruction, but if the court would permit me, what the court did say in its instruction, if I can find it in my note here, is that a person has possession of something if that person knows of its presence and has physical control of it or knows of its presence and has the power and intention to control it. Well, I would submit to the court that whether you use the words dominion and control or say power and intention to control it, the intent there is the same. It certainly covers the same conduct. What does the standard instruction say? I believe this was the standard instruction on possession. Doesn't it use the word dominion and control, the words? I don't believe it does, Your Honor. But that being said, Mr. Lee's testimony, if the court takes a moment to look at it, he basically says that he gained knowledge of the gun while he was... It basically took three parts for him. He was groping around for the drugs while he was in the high-speed chase. He then sees what he later connects as the butt of the gun as he's running from the car and he puts those two mental pictures together when he hears from his girlfriend, Melissa, that he's been charged with having a firearm. He says that, actually, on several different occasions. He says that specifically at S.E.R. 133 when he says, the first I knew concrete about the gun was when Melissa told him. And he says, again, at S.E.R. 140 that the whole picture came together when Melissa told him. Now, why is that important? What is important about this is his whole theory of the defense is really that he never knew that there was a gun in the car until he was actually out of the car and running. And certainly the court's instruction would have dictated, if the jury believed him, that they would have acquitted him because he's never claimed that he had knowledge of the gun while he was actually in the car for dominion and control. But I would go further, Your Honor. The first sentence here, and that's been the focus of counsel's argument, relates to momentary touching. And I think, first of all, the factual basis is not there, but in any event, the law does not support a notion that there should be a defense for momentary touching. Yes, the Johnson opinion of this Court dealt with a good Samaritan case, but that's not where it stopped. The Court, in analyzing that particular factual circumstance, looked at the question of possession versus retention and, in essence, said that this is not a retention statute, this is a possession statute. So if there is the knowledge of the gun and the intent to possess it, no matter how fleeting it is, it's possession. Now, counsel has argued the Batamana case and the Kearns case, control, but as she acknowledged, those are sufficiency of the evidence cases. And I suppose if we were here today arguing about whether or not there was sufficient evidence if the only evidence we had here was the gun was in the car without any fingerprints and without his efforts to obstruct thereafter and whether or not his fleeting touching, if the government's theory here had been his fleeting touching, maybe we would have a different case than we have. But Batema and Kearns also are instructive in that they present a slightly different circumstance. In Batema and Kearns, it's undisputed, I think, that what was going on here was a drug sale where the drugs were actually in the possession of the seller. In one case, in Batema, an undercover agent selling the heroin, I believe, and in Kearns, it was marijuana in the trunk of the seller's car and the marijuana never transferred to the purchaser, even though the purchaser had taken his hand, stuck it in the bag and taken a sample of the marijuana in the same way that in the heroin case, took a sample, the drugs actually remained in the possession of the undercover agent who was acting as the seller in those cases. So the facts are pretty different. I mean, I suppose, again, if we were arguing about a case where Mr. Lee was perhaps seeking to acquire again and someone else was holding it and perhaps he took his finger out to touch it, maybe we'd have a different factual circumstance. But that's not this case. I would submit, Your Honors, that the facts of this case do not support the fleeting possession instruction requested, that it was not part of the law, and in any event, that the trial judge's instructions here were more than sufficient to support his theory and to allow him to make his argument. Thank you. Does the Court have questions for me? Any questions? If not, I will rest on grief and ask this Court to affirm Mr. Lee's convictions. Okay. Your Honor, I've used my time. Can I have a minute? Did you talk for 20 minutes? I did. Well, at least you were up there for 20 minutes. We were doing some of the talking. Can I give you a minute? Yeah, sure, sure. Thank you. Quickly, on the public trial issue, counsel went through a weighing test to determine whether the values of an open courtroom were affected by closure in this case, and she went through a series of four factors that would probably not be satisfied in any voir dire case. The problem is that we already have Supreme Court authority saying that voir dire is one of those things that's presumptively open, regardless of those factors to the contrary. So we don't get to re-weigh in every case. The starting point is that voir dire is presumptively open. Not that it might be closed sometimes. The only other thing I'll touch on is the factual basis for the instruction. Let me refer you to my excerpt of record at page 148, where Mr. Lee testified, the gun touched his hand in the car, he hit me, and the gun hit up and went over there. I didn't really realize it was a gun until I seen it on the floor, and it went boom, and I seen it, and it all happened real fast, and he keeps talking about how he realized it was a gun there in the car immediately upon touching his hand. So I think this is precisely the case, and the only case, where a fleeting possession instruction might be appropriate. Thank you, Your Honor. Okay. Thank you very much. All right. Good argument on both sides, and we'll now move on to our final case, Kalamath Siskiyou Wildlands v. USFS. Thank you, Your Honor.
judges: Pregerson, Canby, Hall